Víctor Rosario, Petitioner and Appellant, *v.* José M. Gallardo, Commissioner of Education of Puerto Rico, Respondent and Appellee.

No. 8683.   Argued June 4, 1943.—Decided June 22, 1943.

*Virgilio Brunet* for appellant.   *M. Rodríguez Ramos, Acting Attorney General,* and *G. Benítez Gautier, Deputy Attorney General,* for appellee.

Mr. Justice Snyder delivered the opinion of the court.

Víctor Rosario is a permanent school teacher at Arecibo. On January 8, 1940, the Commisioner of Education filed a charge of immoral conduct against Rosario, suspending him from employment and salary. The charge, which was that Rosario on a certain night had sexual relations with a teacher

who was the wife of another teacher, was heard on April 17, 1940. On June 17, 1940 the Commissioner wrote Rosario as follows:

"After giving you a hearing on the charges preferred against you on January 8, 1940, and after careful consideration of the record of the case, I have come to the conclusion that the evidence presented warrants your suspension from the service. Therefore, you are hereby suspended without pay from January 8, 1940 to the end of the school year 1939–40; that is, to June 14, 1940. Furthermore, for the good of the service, you shall be given an assignment for the year 1940–41 in a school district other than Arecibo."

Thereafter, Rosario filed the present petition for mandamus praying (a) that he be reinstated in his teaching position at Arecibo, and (b) that the Commissioner be directed to order payment to him of $735.75, his salary from January 8 to June 17, 1940. The lower court granted prayer for reinstatement at Arecibo, but denied the petition for salary during the period of suspension. The Commissioner did not appeal from the portion of the judgment annulling the transfer of Rosario to Aguadilla, but Rosario appealed from the judgment in so far as it denied his right to recover his salary during the period he was under suspension.

The record in this case is peculiar, as there is nothing in it which enables us to determine conclusively whether the Commissioner actually found that Rosario was guilty or innocent of the specific charge for which he was tried. The Commissioner's letter is silent on that subject. It states only that "the evidence presented warrants your suspension from the service." That might conceivably be construed as a finding of guilt, but the petitioner is entitled to a clear pronouncement from the Commissioner as to whether he is guilty or innocent of such a serious charge. On the other hand, the record shows that a similar charge against the female teacher involved was dismissed by the Commissioner, that the latter, after an inspection of the site of the alleged episode, indicated in his written opinion on the case that it

was absurd to believe that the incident took place as charged, making him doubt seriously the veracity of the female school teacher's husband; who was the only witness who testified as to the alleged facts involved in the charge.

The Commissioner apparently wishes to stop short of a finding of guilt on the particular charge before him,[1] but felt it desirable both to deprive Rosario of his salary during the period of suspension pending hearing and to transfer him to another municipality. The lower court held that the transfer would deprive Rosario of his vested right to teach permanently at Arecibo. The Commissioner has acquiesced in that portion of the judgment. The problem of whether, under suitable regulations, the Commissioner could, on proof of such a charge, transfer a teacher from one municipality to another is therefore not before this court in the instant case (See *González* v. *Gallardo, Commissioner,* decided June 22, 1943, *post,* p. 263).

The question that does confront us here is whether, after a hearing of such a charge, the Commissioner, although per-

---

[1] The closing paragraphs of the opinion of the Commissioner, as found in the record, read as follows:

"Concluding, in our judgment, that the possibility that the public sexual act to which Mr. _____ referred was committed, it would remain to determine if subsequently, in the course of that night Mr. Rosario and Mrs. _____could have had sexual intercourse. We are inclined to believe in the possibility that this might have occurred, but this phase of the events in question is involved in an impenetrable cloud owing to the scarcity of evidence to establish those facts.

"* 　　 *　　 *　　 *　　 *　　 *　　 *

"While it is true that the evidence in this case is not of such weight and magnitude to persuade a fair and impartial judge to render a decision removing the defendant permanently from employment as a school teacher, it is none the less true that the acts committed by the respondent and the attitude adopted by him and by the other persons involved herein are not desirable and must be bitterly censured.

"Because of the aforegoing facts and opinion, we believe that the high principles of justice are met by adjudging the respondent guilty of improper conduct in the discharge of his duties as a public school teacher, and punishment should be imposed on him to serve as a lesson to respondent and as a precedent to the other professionals who perform the sacred duty of public instruction in Puerto Rico."

mitting Rosario to remain in office as a teacher could nevertheless deprive him of his salary while under suspension pending hearing.

Even assuming *arguendo* that the Commissioner's letter constituted an adjudication of guilt, his sole function under §5 of Act No. 312 [2], Laws of Puerto Rico, 1938, and §42 of the Compiled School Law [3] was to discharge Rosario. Such a discharge would automatically terminate any claim by Rosario for salary during the period of his suspension. But for the Commissioner to deprive him of his salary during the suspension period, as the sole punishment for his wrongful conduct, is to impose punishment not authorized by local statute. The contention that §17 of the Organic Act gives the Commisioner unlimited powers affecting removals, transfers, disciplinary action, and the like, not found in local law or regulations, was disposed of in *González* v. *Gallardo, Commissioner, supra.*

The district court reached a correct conclusion on this phase of the case. It pointed out that under §42 of the Compiled School Law the Commissioner, after hearing on the charge, could choose only between reinstatement and removal. Nevertheless, the district court held that a teacher who is lawfully suspended pending hearing on charges of this nature has no right to compensation for that period, even if he be ultimately cleared of such charges. We are satisfied that the rule on this point should be to the contrary. (See *Saenz*

[2] Section 5 reads as follows:

"Permanent teachers may be suspended or removed from office only for just cause, according to the provisions of, and the procedure prescribed by, the Compiled School Law and the regulations of the Department of Education; *Provided, however*, That in cases of immoral conduct or physical or mental disability, said teachers shall be suspended summarily, until the hearing of the case."

[3] Section 42 reads in part as follows:

"Teachers shall be suspended from their positions by the Commissioner of Education or by the school board for cruelty, immorality, incompetency, insubordination or negligence in the performance of their duties, and said Commissioner may reinstate them or dismiss them and cancel their licenses . . . ."

v. *Buscaglia, Treasurer,* 61 P.R.R. 384; *School District* v. *Morgan,* 260 Pac. 46 (Okla., 1927); *Gragg* v. *Hill,* 58 S. W. (2d) 150 (Tex., 1933).) Suspension freezes the claim of the teacher until the Commissioner can conduct a hearing and make a decision. But, in the absence of a finding of guilt, we find nothing in the statutes justifying permanent deprivation -of salary for the period of suspension. Whatever the rule may be as to other public employees not enjoying vested rights such as those conferred by law on permanent teachers, we find no equitable grounds on which, in the absence of statute or even regulation, such a teacher, who is tried on an administrative charge and not found guilty of the specific charge contained therein, should nevertheless be denied his right to collect his salary during the suspension period.

We are not to be understood as holding that there was a finding by the Commissioner clearing Rosario of the charge in question. However, the test which must be used is that compensation must be paid for the suspension period unless there is a definite finding of guilt. In discussing the problem of whether local law or regulation provided for punishment short of removal, such as temporary deprivation of salary, we assumed above, solely for the purpose of examining that question, that the Commissioner had held that the charge was established. Even in that situation, as already noted, he was not warranted in imposing as the punishment, short of discharge, the loss of salary for a particular period. But since as a matter of fact the Commissioner failed to find Rosario guilty of the charge on which he was tried, and since the Commissioner has acquiesced in the judgment of the district court ordering that Rosario be reinstated as a teacher at Arecibo instead of being transferred to Aguadilla, we are unable to conclude that the Commissioner is nevertheless entitled to insist that Rosario should not be compensated for the time he was under suspension under the charge which the Commissioner never found had been satisfactorily established against him. To hold otherwise would theoretically enable

260

a Commissioner to harass a permanent teacher by an interminable series of charges, suspensions and hearings, on which no definite conclusions of innocence or guilt would be announced, but on each occasion cutting off his salary during the suspension period. We are by no means indicating that the present Commissioner has indulged in such conduct. On the contrary, the Commissioner demonstrated in this case commendable zeal and a high sense of duty in exploring the charge herein, although, as we have seen, he was mistaken as to the prerogatives vested in him by present law and regulation in connection therewith. We only cite this possible example to illustrate the necessity of holding that under the laws and regulations presently in force only a definite finding of guilt, on the specific charge for which a teacher is tried, followed by removal from office under §5 of Act No. 312 and §42 of the Compiled School Law, carries with it the loss of salary since the date of suspension.

The cases cited by the Attorney General from other jurisdictions that payment to a *de facto* officer of the salary of a public officer is a bar to recovery by the *de jure* officer of such salary need not be discussed herein, as there is no evidence in this case that the salary in question was paid to another person.

The judgment of the district court, in so far as it failed to direct the Commisioner to order payment to the petitioner of his salary for the period he was under suspension, will be modified, and a new judgment, including such a direction to the Commissioner, will be entered.

Mr. Chief Justice Del Toro did not participate herein.

CONCURRING OPINION OF MR. JUSTICE DE JESÚS

The reason why I have agreed only with the result of the judgment in this case is that I dissent from that part of the opinion which holds that the Commissioner, after hearing the charges, can choose only between reinstating or dismissing

the respondent. Such an interpretation deprives the Commissioner of the power with which, in my judgment, he is vested by law to suspend any teacher for just cause in those cases where the charges established are not so serious as to justify the cancellation of his license. I base my opinion precisely on §5 of Act No. 312 of 1938 and on §42 of the Compiled School Law which form the basis for the conclusion from which I dissent. Those legal provisions read thus:

"Section 5.—Permanent teachers may be suspended or removed from office only for just cause, acording to the provisions of, and the procedure prescribed by, the Compiled School Law and the regulations of the Department of Education; *Provided, however,* That in cases of immoral conduct or physical or mental disability, said teachers shall be suspended summarily, until the hearing of the case."

"Section 42.—Teachers shall be suspended from their positions by the Commissioner of Education or by the school board for cruelty, immorality, incompetency, insubordination or negligence in the performance of their duties, and said commissioner may reinstate them or dismiss them and cancel their licenses after an investigation which shall be held and in which the school board may file a statement and said teachers shall be heard in their own defense either verbally or in writing: *Provided,* That no suspension by a school board shall be valid for more than five days, and the teacher thus suspended shall not be again suspended for the same cause by said board during the school year in which the first suspension took place."

It should be noted that §5, *supra,* contemplates two kinds of suspensions: one which may be ordered for *just cause,* and another which may be summarily decreed and to which resort may be had only "in cases of immoral conduct or physical or mental disability," such a suspension to be effective only "until the hearing of the case." It should also be noted that the words for *just cause* which appear at the beginning of §5, *supra,* refer to a suspension as well as to a removal from office, which precludes the holding that those words are equivalent to probable cause, since such an interpretation would lead us to the absurd conclusion that a

teacher may be discharged from his position and his license canceled on the basis of the existence of only a probable cause therefor. A removal is final and carries with it the cancellation of the license, whereas a suspension is only temporary. To maintain that a teacher's license may be canceled on the basis of probable cause would be tantamount to holding that a penalty may be imposed on the basis of a mere probability of guilt. Undoubtedly that could not have been the purpose of the lawmaker. In consonance with the provisions of §5, §42 of the Compiled School Law provides that the Commissioner of Education may suspend the teachers from office for the causes expressly stated therein and authorizes him to reinstate them if they have been suspended or to *dismiss them,* cancelling their licenses, naturally, where the fault is of such a character as to render the teacher unworthy of continuing to serve as such. It is a truism that when two powers are of a like nature, the greater power includes the lesser one and, therefore, if we concede that the Commissioner has the greater power to dismiss a teacher and to cancel his license, we are bound to conclude that, in the absence of an express statutory provision to the contrary, he has the lesser power to suspend him from office for such time as the Commissioner may be deem just.

In the case at bar, the Commissioner acquitted the petitioner-appellant of the charge of adultery made against him, and failed to point out any specific act of immorality or improper conduct on the part of the petitioner. It is for this reason that I agree with the judgment, since a suspension for the period specified in the order of the Commissioner is arbitrary, it not being supported by the evidence. Therefore, said suspension cannot be considered as valid for the purpose of precluding the petitioner from collecting the salary of which he was deprived by virtue of the same.